# EXHIBIT

# A

To: Local Election Officers

From: Associate Attorney General Anne Edwards and Assistant Attorney
General Brian Buonamano (BwB)

Re: Memorandum regarding Election laws, Procedures and Potential
Issues for November 8, 2016 General Election

Date: October 31, 2016

---

### Introduction:

This memorandum examines and provides guidance for applying certain election laws and
procedures and responding to election issues that have historically arisen during New
Hampshire's elections. Please review the memorandum and, if you have any questions, please
feel free to contact the Secretary of State or the Attorney General's Office.

### Department of Justice Election Day Operations:

In addition to the attorneys manning the toll free elections line, the Attorney General's Office
will have attorneys and investigators conducting random inspections of polling places
throughout the State, as well as providing assistance to local election officials when such
assistance is requested and/or required.

### How to Contact Us:

The Attorney General's Office will staff its toll free election line from 6 AM until at least 8:30
PM on Tuesday November 8, 2016.

1-866-868-3703

(603) 271-3658

This line is available for the public, election officials, campaign staff and the media to contact
this Office to report concerns or obtain information.

### Maintaining Order at the Polling Place

Moderators have the authority to keep order at the polling place. If any observer, "challenger,"
protestor, or individual electioneering is disruptive and fails to cease his/her disruptive behavior
after being warned, moderators may direct the individual to leave the polling place. If the person
refuses, the moderator should have law enforcement remove the individual.

Note: it is a felony offense under RSA 659:41 to assault an election officer. If a moderator has
reason to believe that a voter or election official has engaged in criminal conduct, such as specially

marking a ballot, interfering with a voter, removing a ballot outside the guardrail, or tampering with the ballot counting device, he or she must report that to the Attorney General's Office. Additionally, it is recommended that polling places have police officers at the poll to both assist with traffic and other issues outside of the polls as well as within the physical polling place.

## Election Day Voter Registration:

A person who is registering at the polling place on the day of the State General Election and who is without documentation of age, identity, citizenship or domicile, may prove these qualifications by completing page 2 of the voter registration form. Page 2 includes sworn statements regarding age, identity, citizenship and domicile. This specific registration form may only be used on the day of the State General Election.

Applicants using page 2 of the form should circle "yes" or "no" next to the each item they lack proof for and then initial in the space provided. If page 2 of the registration form is used to substantiate any of the four items, the signature of the applicant must be witnessed by either an election official or someone authorized by law to witness signatures (such as a notary or justice of the peace) who is working in conjunction with the Supervisors of the Checklist.

If lines are long, it may be helpful to assign election officials to go along the lines and determine whether or not people need assistance in getting the forms ready for the Supervisors.

**CAUTION:  Under no circumstances should an applicant be turned away at the time and place of registration.  Applicants who do not have documentation with them to establish their qualifications should not be told to go get such documentation.  Rather, they must be given the opportunity to prove their eligibility by swearing to the Election Day registration form.**

## Voter Check-in:

New Hampshire law requires ballot clerks to request that voters present photo identification when they check-in to vote at the polling place.  RSA 659:13, I. The authorized forms of photo identification are prescribed by RSA 659:13, II.  If a voter does not have sufficient photo identification, and if no moderator, supervisor of the checklist or clerk of a town, ward, or city can verify the voters identity, he or she *shall* still be allowed to vote provided he or she executes a challenged voter affidavit and has his/her photo taken.  RSA 659:13 (I)(c)(2).

> *Polling place arrangement:* It is recommended that the polling place be arranged so that a "No Photo ID" table is placed near the entrance to provide voters without photo identification an opportunity to sign a challenged voter affidavit before they get to the check-in line.  The "No Photo ID" table should contain a copy of the official checklist and multiple copies of the challenged voter affidavit.  The table should be staffed by individuals who are authorized to witness signatures on the challenged voter affidavits.

**CAUTION: Under no circumstances should a voter be turned away at check-in because he/she does not possess sufficient photo identification, nor should a voter be told to go get such identification. Rather, the voter must be given the opportunity to sign a challenged voter affidavit. Election officials should not in any way suggest to a voter that he/she must have a photo identification to vote. There should be no mention of photo identification to voters in or around the polling place until they are with the greeters or the ballot clerks. Likewise, there should be no signage displayed at the polling place or on its grounds, regarding photo identification requirements, other than what has been distributed by the Secretary of State.**

## Challenges:

Any voter registered in the same town or ward may, with due cause, challenge any other voter appearing to vote at such election. No challenge may be made unless an "Asserting a Challenge" form is completed by the challenger and signed under oath stating the specific source of the information or personal knowledge upon which the challenge is based. A challenge that is made on an insufficient basis, such as mere speculation, must be rejected. Challenging another person's right to vote based on information that the challenger knows to be false or misleading is a felony. RSA 659:40, III (a).

*Effect of a Well-Grounded Challenge with Sufficient Basis*: If the moderator or supervisors of the checklist (for age, citizenship or domicile challenges) upholds the challenge to the voter, the moderator must offer the voter a Challenged Voter Affidavit. The voter shall not be permitted to vote until he/signs the affidavit and gives it to the moderator. RSA 659:27. The ballot of a voter challenged in person may not be marked in any manner to indicate a challenged ballot. RSA 659:36.

- *Basis for Domicile Challenges:* The challenger must assert either specific source of the information or personal knowledge that a person is not domiciled within that particular town or ward. A challenge based upon the length of the person's domicile is not a valid challenge. The courts have consistently ruled that there is no minimum period of time that a person has to have been domiciled within the town or ward in order to vote. Similarly, the fact that a person intends to move in the future does not in itself present a valid basis to challenge a voter. For more information on challenges, please review http://nhvotes.sos.nh.gov and pages 125-127 in the Election Procedure Manual.

- A foreclosure notice in the name of a particular voter is not a proper basis for a challenge. Mail sent to the voter at the mailing address listed on the checklist which is marked by the United States Post Office indicating that the voter has moved is not a proper basis for challenge unless the challenger states that he/she knows that the voter's true domicile is in another town or ward. As is specified in RSA 659:27-a, I, a challenger asserting that a person offering to vote is not domiciled in the town or ward must also assert either personal knowledge of the person's "true domicile" outside the polling place or demonstrate a reliable basis for the claim. Unless all these conditions are

met, a challenge based upon domicile is insufficient and must be rejected by the moderator. For more information on challenges, please review http://nhvotes.sos.nh.gov and pages 125-127 in the Election Procedure Manual.

## Absentee Ballots and Election Official's Responsibilities:

Processing of previously received absentee ballots shall begin at 1:00 p.m., unless the moderator has posted and announced a different time, which must be at least 2 hours after the polls open.

The moderator is required, when the polls open, to announce the time at which the processing of absentee ballots will begin. The processing of the absentee ballots shall not unnecessarily interfere with normal voting procedures, nor shall the polls be closed at any time during the processing of such ballots.

- *Processing Absentee Ballots:* The moderator shall begin processing absentee ballots by clearly announcing that he is about to open the envelopes which were delivered to him/her. Absentee ballots which are received after 1:00 p.m. and prior to 5:00 p.m. shall be processed as soon after receipt as possible. RSA 659.49. The moderator shall remove the affidavit envelope containing the ballots of each absentee voter and shall compare the signature on the affidavit envelope with the signature on the application for the ballot.

In order to designate a time at which to begin processing absentee ballots other than 1:00 p.m. on election day, the moderator must post the designated time at the polling place and one other public location at least 24 hours before the polls open. Additionally, when the polls open, the moderator must announce the time at which the processing shall begin.

*Absentee Signature Match:* In determining whether signatures match, the moderator should decide whether it is more likely than not that the same person signed both forms. The more likely than not standard does not require a perfect match.

- Moderators should be aware that a person's signature often varies depending on the circumstances, and it is often hard to tell whether two signatures were written by the same person. Because a mistake will deprive a citizen of his/her constitutional right to vote, moderators should take great care before ruling a ballot invalid because of signature differences.

- *Challenging Absentee Eligibility:* A challenge to an absentee ballot on the basis that the person who voted absentee is present in the town or ward and available to vote in person is NOT a valid basis for a challenge. Allegations that a person wrongfully voted absentee and should have voted in person should be filed with the Attorney General's Office.

- *Requirements for Absentee Challenges:* Challenges may be asserted after the

4

moderator publicly announces the name of the absentee voter and prior to the ballot being removed from the inner envelope. A challenge to an absentee ballot must be asserted in the same manner as a challenge to an in-person voter. The challenger must complete an "Asserting a Challenge" form and sign the form under oath stating the specific source of the information or personal knowledge upon which the challenge is based. If the ballot is challenged, the moderator shall write on the envelope containing the word "challenged" and the name and address of the person making the challenge and the reason.

**Election Officials:** As of July 1, 2016, any moderator, clerk, selectman, inspector of election or supervisor of the checklist, whose name appears on the ballot for an elective position, is no longer disqualified from performing his/her duties as an election official. However, any moderator, clerk, selectman, inspector of election or supervisor of the checklist who falls in that category shall not handle marked ballots nor assist with the counting of the votes. RSA 658:24

## Appointment of Additional Election Officials:

No voter should have to wait in line for more than 15 minutes to register to vote, to check-in and pick up a ballot, or to access a voting booth. If there are not enough election officials to process the voters efficiently, the moderator is authorized to appoint an assistant moderator and such other election officials as he or she deems necessary. The moderator may also request the town clerk to appoint an assistant town clerk. Any such additional election officials shall take the oath of office and perform such duties and have such powers as the moderator may delegate to them. However, the moderator may not delegate his/her responsibility to report the vote count to the public. The supervisors of the checklist are authorized to appoint assistant supervisors of the checklist who shall be assistant election officials and have the powers of supervisors for the purpose of registering voters on election day. RSA 658:7.

- *Oath:* The Moderator, the Town Clerk, or the Supervisor of the Checklist respectively are required to administer the oath of office to any person appointed by such election official. The oath of office is set forth in the New Hampshire Constitution at Part 2, Article 84 (Alternative language for those unwilling to swear is set forth in italics in the brackets - the language that is italicized can be substituted for the language that is underlined). The Oath is as follows:

    I, _____ , do solemnly swear (*affirm*), that I will bear faith and true allegiance to the United States of America and the State of New Hampshire, and will support the Constitution thereof. So help me God (*This I do under the pains and penalties of perjury*).

    I, _____ , do solemnly and sincerely swear and affirm (or *affirm*) that I will faithfully and impartially discharge and perform all duties incumbent on me as _____ , according to the best of my abilities, agreeably to the rules and regulations of this Constitution and laws of the State of New Hampshire. So help me God (*This I do under the pains and penalties of perjury*).

5

- *Qualifications*: Official assistants must be 17 years of age on the day he/she is to perform the election duties, must be domiciled in the town or ward where the person is appointed, and must be a United States citizen.

**Waiting Lines for Voting Booths:**  If there is a waiting line for a voting booth inside the guardrail of more than 15 minutes or if additional booths are needed to satisfy the requirement of 1 voting booth for every 100 voters on the checklist, the moderator should set up additional table top voting screens.

**Electioneering:**

New Hampshire law prohibits efforts to influence voters inside the polling place and within the no-electioneering zone as established by the Moderator outside the polling place.  RSA 659:43 - :44-a.  The outside no-electioneering zone shall be a minimum of ten feet wide and shall extend from the entrance of the building out as far as necessary to allow voters clear hassle-free access to and from the polling place.  Moderators should establish areas where campaign workers may stand with signs and interact with those voters who choose to stop by on their way to vote, provided that such interaction takes place outside of the no-electioneering zone.

No electioneering shall occur inside areas of the building used as the polling place.  RSA 659:43.  No election official shall engage in any electioneering inside the polling place.  RSA 659:44.  No person shall distribute, post or wear any campaign materials into the polling place.  RSA 659:43(I).

**Placement and Removal of Political Advertising**

No political advertising shall be placed on or affixed to any public property including the polling place or its ground.  RSA 664:17.  Moderators should ensure that all campaign signs on the polling place grounds are attended to; meaning the signs must be held or within arms' reach of a campaign worker.  If unattended campaign signs are observed, moderators should request that state, city, or town law enforcement or maintenance personnel remove them.  The signs should be placed in an area designated by the moderator outside the view of the public where they can be retrieved by the campaigns.  Signs in or on automobiles parked at the polling place are considered unattended signs if an individual is not with the vehicle at all times.

**Voter Suppression/Intimidation**

New Hampshire law, RSA 659:40, treats certain types of voter intimidation and suppression as a crime. It is a felony for a person to:
- Directly or indirectly bribe any person to refrain from registering to vote or voting; to vote for or against any question submitted to voters; or to vote for or against any ticket or candidate for office at any election;
- Use or threaten force, violence, or any tactic of coercion or intimidation to knowingly induce or compel any other person to vote or refrain from voting, vote or refrain from voting for any particular candidate or ballot measure, or refrain from registering to

6

vote;

- Engage in voter suppression by knowingly attempting to prevent or deter another person from voting or registering to vote based on fraudulent, deceptive, misleading, or spurious grounds or information.  Prohibited acts of voter suppression include:

  a) challenging another person's right to register to vote or to vote based on information that he or she knows to be false or misleading;
  b) attempting to induce another person to refrain from registering to vote or from voting by providing that person with information that he or she knows to be false or misleading; or
  c) attempting to induce another person to refrain from registering to vote or from voting at the proper place or time by providing information that he or she knows to be false or misleading about the date, time, place, or manner of the election.

Election officials should take very seriously reports of any of the above conduct and contact the police if they witness any of the above conduct or to prevent such conduct from persisting.

## Vehicle Access to Polling Place and Parking Areas

Moderators should have assistants periodically inspect vehicle access to the polling place.  While the voting line in a particular polling place may not be long, the line of vehicles attempting to access the parking lot of the polling place could be a significant problem.  If vehicle access could be a problem at a particular polling place, moderators and selectmen should work with local police to plan for any traffic congestion that could occur and immediately address any traffic congestion that does occur on election day.  To the extent that vehicles are lined up to gain access to a particular polling place and polls are to close within one hour, moderators should have assistants/police monitor the vehicle line.  At the poll closing hour, the assistant/police must locate the last car in line and identify it as such to permit the voter(s) in the vehicle their right to vote.

Each polling place should have adequate parking to allow voters to park conveniently while they vote.  A common problem at polls is that a significant amount of the most convenient parking spaces are taken by vehicles bearing election signs, poll workers, and people who are electioneering.  If this has been an issue in your community, we recommend that you work with your selectmen and your Police Chief to adopt a temporary ordinance that sets a time limit for parking in a sufficient number of spaces near the polling place to ensure that voters have parking. **Poll workers and people electioneering should be provided with parking that is not close to the entrance to the polling place.**

## Thank you

This office appreciates your dedication to this State's election process.  It is because of the hard work by local election officials, such as yourself, that our elections continue to be a model for other states to follow.  If you have any questions, please do not hesitate to contact us.