UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| Mary Saucedo, | \* |
| Maureen P. Heard, and | \* |
| Thomas Fitzpatrick, | \* |
|     Plaintiffs | \* |
| | \* |
| v. | \*   Civil No. 17-cv-183-LM |
| | \* |
| William M. Gardner, | \* |
| in his official capacity as Secretary of State | \* |
| of the State of New Hampshire, | \* |
| and the Secretary of State's Office | \* |
| of the State of New Hampshire, | \* |
|     Defendants | \* |
| | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## AFFIDAVIT OF DAVID SCANLAN

I, David Scanlan, being first duly sworn, state the following based on my personal knowledge:

1. I am the Deputy Secretary of State for the State of New Hampshire. I have been employed in this capacity for the past fifteen years. One of my primary responsibilities is to oversee the administration of state and local elections as well as manage the employees in the Elections Division in the Department of State.

2. Defendant's Exhibit 2 (State of New Hampshire Analysis of Absentee Ballots); Defendant's Exhibit 3 (Breakdown of Absentee Ballot Rejection Reasons for the November 8, 2016 General Election); Defendant's Exhibit 4 (Analysis of Signature Mismatch Rejections of All Records Subpoenaed By Plaintiffs); Defendant's Exhibit 6 (List of Signature Mismatch Rejections for Towns and Wards that Failed to Attend and Attended Department of State Trainings); Defendant's Exhibit 7 (Current Absentee Ballot Affidavit Envelope and Request Form); Defendant's Exhibit 8 (Instructions for Absentee Ballot Voters 2010-2017); Defendant's Exhibit 9 (2016 Election Procedure Manual); Defendant's Exhibit 10 (2016 Election Administration and Voting Survey – Overview) are true and accurate to the best of my knowledge. I am relying on those reports in stating the following.

3. Every town and city in the State of New Hampshire has a town or city clerk. The town or city clerk is responsible securing ballots prior to an election. The voter is responsible for ensuring that they qualify for receiving an absentee ballot and is required to provide his or her signature for any request. Once a request has been made, the clerk is responsible to mail or

deliver the absentee ballot to the individual who had requested it. The voter is responsible for following the instructions on how to fill out the ballot.  Once the voter has completed the absentee ballot he or she is required to place the absentee ballot into an affidavit envelope, sign the affidavit (Defendant's Exhibit 7), and then place the affidavit envelope into an outer envelope and return it to the clerk's office in the town in which he or she is domiciled.  Once the completed absentee ballot is received by the clerk, the clerk typically affixes the sealed absentee ballot envelope to the request form.  This enables the ballots to be processed at a greater speed on election day. The clerk is required to deliver the absentee ballots to the moderator of the wards within the city or town.

4.      Every town and ward elects a moderator who is responsible to oversee elections and town meetings within their jurisdiction. Moderators also have the statutory authority to appoint assistant moderators to aid in performing the numerous election-day tasks.  On election days, the moderator numerous election day duties as elaborated in New Hampshire Elections Procedure Manual. *See* Defendant's Exhibit 9, p. 59-75. These duties include performing the functions of the chief election official at the polls, preparing and arranging the polling place, assisting voters when requested, managing the ballot counting devices, overseeing the counting of votes and declaring the election results. The moderator is also responsible for processing absentee ballots on election day and conducting the so-called signature match process. The public is invited to observe the processing of absentee ballots.  If an absentee ballot is rejected for any reason, the name of the voter is announced and the public is informed that the ballot has been rejected.

5.      For the November 8, 2016 General Election, approximately 755,850 total ballots were cast.  On election day, town and city election officials received and processed approximately 78,430 absentee ballots.  Of this total amount, according to our ElectionNet database, 275 ballots were rejected on the basis of a signature mismatch. This amounts to 0.35% of the total number of absentee ballots submitted and 0.036% of the total number of ballots cast.

6.      However, after reviewing the absentee ballot request forms and affidavit envelopes of the 166 voters that were subpoenaed and submitted by the Plaintiffs in this matter (*See* Pl. Exh. G), the number of true signature mismatch rejections is actually lower than 275.  As detailed in Defendant's Exhibit 4, 30 ballots were actually rejected for reasons other than a signature mismatch. These reasons include: (a) voters failing to provide a signature on either the request form or the affidavit envelope, (b) voters signed using a computer generated signature, (c) voters signing a different name on the affidavit envelope than on the request form, and (d) a paperwork mismatch which indicates a possible error by the Hanover town clerk that lead to ballots being rejected.

7.      In light of the above, the total number of ballots rejected on the basis of a signature mismatch is actually no higher than 245 during the 2016 General Election.  This amounts to 0.31% of the total number of absentee ballots submitted and 0.032% of the total number of ballots cast in that election.

8.      This rejection rate (0.31%) is comparable to variances in election results during the recounts conducted after the 2016 elections. There were 14 recounts conducted by hand after the 2016 General Election. The total number of votes reported on election night by moderators for these 14 races was 241,037.  The election night results are largely generated by the electronic ballot counting devices, although in some limited circumstances the moderators are required to hand-count ballots and add them to the tallies reported by the devices.  Ballot counting devices are generally an extremely accurate and helpful tool in determining the intent of a voter <u>if</u> the voter fully complies with the instructions for marking their ballot. However, election officials are more accurate than the ballot counting devices when a voter has failed to comply with the voting instructions. For example, the machines are not as good at determining the intent of a voter who marked outside of the oval or where two candidates have been selected for one office, and the voter has crossed off one choice.  After the Department of State conducted a hand recount of the election night results, a total of 567 votes were changed.  This is approximately 0.24% of the total number of votes originally counted.

9.      Although the Department of State never investigated signature mismatch rejection rates in prior elections, I am aware that the New Hampshire Attorney General's office undertook that effort approximately in 2004 or 2005.

10.     During the months prior to the 2016 general election, the Department of State trained approximately 1,060 town and city election officials.  This included 188 town and city ward moderators and assistant moderators from 163 wards and towns.  We perform this training before every regularly scheduled state and federal election and prior to city and town elections, when necessary.  At the training sessions for the 2016 general election, we specifically addressed the signature match standard as elaborated in the Election Procedure Manual (Exhibit 9, p 67) and guidance that is consistent with the October 2016 memorandum that was issued by the New Hampshire Attorney General's Office (Exhibit 10).

11.     On March 7, 2018, at my deposition, plaintiff's counsel showed me a document that was a modified version of a chart generated by our office. ECF Doc. 49-23, Plaintiff's Exhibit X. I had never seen this document before my deposition.  The document broke down the rejection as a percentage of total absentee ballots cast on a per-town basis.  In reviewing this document, in response to Plaintiff's counsel's questioning, I stated that anything over 2% "we should take a look at."   In following up on this, I reviewed attendance records at our trainings in the lead up to the 2016 election and compared them with the rates of rejections per town.

 12.     Based on the document that the Plaintiff's counsel showed me, the following 8 towns had rejection rates above 2% of the total absentee ballots received for 2016: Cornish, Goffstown Ward 5, Hampton Falls, Manchester Ward 4, Manchester Ward 5, New Hampton, Portsmouth, and Webster.  Of these towns and wards, none of the moderators attended the Department of State's training session for the 2016 General Election, with the exception of Hampton Falls and

Manchester Ward 4. In other words, 6 out of these 8 towns/wards with higher than typical rejection rates did not attend any training sessions.

13. These results made me look further into the differences between towns and wards that received the training and those that did not. See Defendant's Exhibit 6. The 163 towns and city wards where moderators attended the state's training in the lead up to the 2016 General Election, rejected a total of 191 ballots in the 2016 general election.  The rate of rejection equals 1.17 rejections per town for those town moderators who received this training.

14. By comparison, the remaining 84 ballots that were rejected on the basis of a signature mismatch came from just 31 towns/wards where moderators <u>did not</u> attend the Department's trainings. This means that for these towns that did not receive the state's training they had a rate of 2.71 rejections per town, which is more than double the rate of those who were trained.

15. Due to legislative changes that occurred in 2017, the affidavit envelope and the absentee ballot request form both contain language that notifies voters that the signatures on these two forms will be compared. *See* Defendant's Exhibit 7.  The voters are notified that if their signatures do not match, their ballot may be rejected.

I hereby swear and affirm, under the pains and penalties of perjury that the information contained in this affidavit is true and accurate to the best of my knowledge and belief.

April 18, 2018                                              /s/<u>David Scanlan</u>_____
                                                                    David Scanlan
                                                                    Deputy Secretary of State

THE STATE OF NEW HAMPSHIRE
Merrimack County

Subscribed and sworn to before me this 18th day of April, 2018 by David Scanlan.

                                        By:      /s/<u>Dianna Wimpey</u>_____
                                                    Notary Public

                                        My commission expires: __<u>February 15, 2022</u>_____