**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Mary Saucedo, et al.

    v.                                    Civil No. 17-cv-183-LM

William Gardner, Secretary of State
of the State of New Hampshire,
in his official capacity, et al.


**NOTICE OF RULING**

Currently pending before the court are the parties' cross-motions for summary judgment, as well as plaintiffs' motion to strike.  A hearing on the motions is scheduled for July 16, 2018.  The parties' briefing on these motions, along with the evidence they have submitted, give rise to a number of issues that the parties have not fully explored in their briefs. Therefore, in addition to the issues discussed in their memoranda, the parties should be prepared to address the following at the hearing:

1. In their amended complaint, plaintiffs appear to request that the court wholly strike down the signature-match requirement of RSA 659:50, III.  By contrast, in their motion for summary judgment, plaintiffs request only that the court compel defendants to provide notice and an opportunity to cure before rejecting a ballot on the basis of RSA 659:50, III.

    a. What relief do plaintiffs request?

     b. To what extent does the analysis of plaintiffs'
       claims change depending on the nature of their
       requested relief?

     c. To what extent, if any, does plaintiffs'
       acknowledgment—that they "do not challenge the
       state's requirement that voters sign their
       absentee ballot application and ballot envelope
       affidavit," doc. no. 62 at 26—bear on the
       analysis of their claims?

2. Plaintiffs request that the court require defendants
   to provide voters notice and an opportunity to cure
   before rejecting a ballot on the basis of RSA 659:50,
   III.  However, defendants indicate that moderators,
   who enforce the requirement at the polls, are not
   employees of the Department of State.

     a. To what extent does moderators' absence from this
       suit bear on the ability of the court to give
       effectual relief to plaintiffs?

3. The parties focus on the issue of whether pre-
   deprivation notice and an opportunity to cure is
   necessary in order for RSA 659:50, III to satisfy the
   requirements of procedural due process.  But there is
   evidence in the record regarding defendants' efforts
   to provide post-deprivation notice to voters whose
   votes have been rejected under RSA 659:50, III.  See
   doc. no. 49-1.

     a. Does the current procedure for providing post-
       deprivation notice of rejection comply with the
       demands of procedural due process?  If not, what
       additional procedures could be imposed to cure
       the constitutional infirmity?  The parties should
       be prepared to address these questions under the
       test set forth in Mathews v. Eldridge, 424 U.S.
       319 (1976).

4. Defendants have filed a number of affidavits from
   local election officials in order to "provide a
   snapshot of how cities and towns actually implement
   RSA 659:50." Doc. no. 54 at 8.  These affidavits show
   that moderators consider extrinsic evidence in

applying 659:50, III.  Defendants appear to suggest
that the practices described in the affidavits are
consistent with the practices of moderators statewide.

    a. Does RSA 659:50, III permit moderators to
       consider extrinsic evidence in deciding whether
       the signature on the absentee-ballot affidavit
       "appears to be" executed by the same person who
       signed the application?

    b. If RSA 659:50, III permits each local moderator
       to consider extrinsic evidence when evaluating two
       signatures, does such practice pass
       constitutional muster under the tests applicable
       to plaintiffs' constitutional claims,
       particularly Bush v. Gore, 531 U.S. 98 (2000)?

    c. If RSA 659:50, III does not permit moderators to
       consider extrinsic evidence, how does the
       statewide practice of considering extrinsic
       evidence bear on plaintiffs' constitutional
       claims?

5. The parties appear to agree that plaintiffs are
   bringing facial challenges to RSA 659:50, III.  Even
   so, the parties proffer evidence relating to the
   statute's application in recent elections.

    a. To what extent may the court consider such
       evidence on a facial challenge?

6. Plaintiffs challenge defendants' assertion that their
   claim under the Americans with Disabilities Act is
   moot by virtue of recent amendments to RSA 659:50,
   III.  In her deposition, plaintiff Mary Saucedo
   indicated that her husband will "[d]efinitely" assist
   her in completing her absentee ballot in the future.
   Doc. no. 49-5 at 7.  Under the new version of RSA
   659:50, III, a person who receives assistance in
   casting an absentee ballot due to blindness or
   disability is exempt from the signature-match
   requirement.

    a. In light of the exemption to RSA 659:50, III, is
       the ADA claim moot?  If not, what evidence
       demonstrates that the claim is not moot?

7. RSA 659:50, III seeks to ensure that the same person executes both the absentee-ballot application and absentee-ballot affidavit.  The statute would thus appear to prevent a person from obtaining and casting another's absentee ballot.

    a. Is there evidence in the record to show that this specific kind of voter fraud exists, either in New Hampshire or in any other state?

    b. Are there any alternative procedures that would allow moderators to ensure that the same person executes both documents, without requiring that they engage in handwriting analysis (e.g., assigning each absentee voter a confidential PIN number)?

SO ORDERED.

_____
Landya McCafferty
United States District Judge

July 11, 2018

cc:   Counsel of Record

4